Dear Mr. McCrory:
You have requested an opinion of the Attorney General regarding the proper interpretation of Article 7, Section 21 (C) (16) of the Louisiana Constitution of 1974 relating to exemptions from ad valorem taxation. You specifically ask whether floating crane barges and floating grain elevators used to transfer bulk cargo from river barges to oceangoing vessels and from oceangoing vessels to river barges are entitled to exemption from ad valorem taxes.
Initially, it should be noted that the authority to determine whether a particular agency should be exempt from the payment of ad valorem taxes is a factual determination exclusively reserved by Article VII, Section 18 (E) of the 1974 Louisiana Constitution to the Assessor, the parish governing authority, the Louisiana Tax Commission and the courts. See Attorney General Opinion Nos. 97-100, 96-320, 93-392, 92-660 and 89-599. While the Attorney General does not have the authority to grant tax exemptions, the following represents applicable laws and jurisprudence which may be used by the appropriate authorities in making individual decisions.
The jurisprudence of this state has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body, and against the taxpayer desiring the exemption. Any plausible doubt is fatal. Thus, an exemption, being an exceptional privilege, must be clearly, unequivocally and affirmatively established.Zapata Haney Corp. vs. Larpenter, 583 So.2d 867 (La.App. 1st
Cir. 1991), writ denied. With these principles in mind, we focus now upon the issue presented in your request.
Article 7, Section 21 (C)(16) of the Louisiana Constitution provides the following:
 "Section 21. In addition to the homestead exemption provided for in Section 20 of this article, the following and no other shall be exempt from ad valorem taxation:
 * * * (C)(16) ships and oceangoing tugs, towboats and barges engaged in international trade and domiciled in Louisiana ports. However, this exemption shall not apply to harbor, wharf, shed and other port dues or to any vessel operated in the coastal trade of the states of United States."
This exemption is carried over from the exemption granted in the Louisiana Constitution of 1921 in Article 10, Section 4 (3). As can be gleaned from the above, with specific regard to the issue before us, four requirements must be met to qualify for ad valorem tax exempt status:
 (1). The vessel at issue must be either (i) a ship (ii) an oceangoing tug, (iii) a towboat or (iv) a barge;
 (2). The vessel must be domiciled in a Louisiana port;
 (3). The vessel must be engaged in international trade; and
 (4). The vessel must not be operated in the coastal trade of the states of the United States.
With regard to the first requirement, it would appear that the floating crane barges and floating grain elevators constitute "barges" as that term is used in Section 21(C)(16).
With regard to the second requirement, your request does not specify the domicile of the barges in question. The tax exempt status of the barges is contingent upon your determination that they are domiciled in a Louisiana port.
With regard to the third requirement, the phrase "international trade" is synonymous with the term "overseas trade and commerce" which was used in the predecessor exemption in the 1921 Constitution. The phrase is also synonymous with "foreign commerce". In A P Boat Rentals Inc., v. Cronvich,361 So.2d 1260 (La.App. 1st Cir. 1978), writ denied, the Court held:
 "We do not agree that the delegates to the Constitutional Convention by the changing of the terminology `overseas trade and commerce' to `international trade' intended any change in the meaning of these terms. Appellants have not cited to this Court any debate from the Constitutional Convention in support of this argument, nor have we been able to find any. We are convinced that the delegates intended no distinction, and thus the terminology is synonymous.
 * * * `International commerce' or `commerce with foreign nations' has been described at 15 C.J.S. Commerce, § 3 as follows: `While commerce with foreign nations, sometimes referred to as `international commerce', has been described as commerce of the United States with foreign nations, it has been said to mean commerce between citizens of the United States and citizens or subjects of foreign governments, as individuals. It means trade and intercourse in all its branches, and embraces species of commercial intercourse between the United States and foreign Nations including transportation, and it comprehends transportation from a foreign country into the United States, but is limited to commerce and transactions which, either immediately or at some stage of their progress, are extraterritorial."
In Cooper Stevedoring Co, Inc. v. Secretary of the LouisianaDepartment of Revenue and Taxation, 555 So.2d 32 (La.App. 1st
Cir. 1989), the Court relied on established precedents of the United States Supreme Court to determine that floating crane barges ". . . are clearly part of interstate or foreign commerce as these terms are generally understood".
We also find the following United States Supreme Court cases to be helpful in your determination of the tax exempt status of the vessels at issue. They also appear to support the position that the vessels at issue are engaged in "international trade".
In Puget Sound Stevedoring Co. v. State Tax Commission,302 U.S. 90 (1937), the Court held that the business of loading and unloading vessels is a continuation of the transportation of cargo and, therefore, is interstate or foreign commerce.
In Joseph v. Carter Weeks Stevedoring Co., 330 U.S. 422 (1947), the Court found that stevedoring services are interstate or foreign commerce, and that transportation in commerce, at the least, begins with loading and ends with unloading. Thus, stevedoring is essentially a part of the commerce itself. See also Department of Revenue of Washington v. Association ofWashington Stevedoring Co., 435 U.S. 734 (1978).
With regard to the fourth requirement, the Constitution does not exempt from ad valorem taxes vessels or barges operating in the "coastal trade of the states of the United States." There appears to be no debate or discussion by the redactors of the 1974 Constitution discussing the phrase "coastal trade of the states of the United States." Instead, the focus was on the geographical bounds that are included in such a term. In other words, the concern is whether the activity is considered domestic or foreign commerce. In A P Boat Rentals Inc., cited supra, the Court distinguished domestic commerce as "commerce and navigation between different places along the coast of the United States. Commercial intercourse between different districts and different states, different districts in the same state, or different districts in the same district, on seacoast or navigable river."
Conversely, it would appear that if the cargo that the floating crane and elevator barges load and unload were moving from one point in the United States to an alternate destination at another point in the United States, than the cargo would be moving in domestic commerce, and would be a part of that domestic or coastal trade. Hence, it would not be exempt from ad valorem taxes.
As previously noted, your opinion request indicates that the cargo being loaded and unloaded is destined for foreign commerce. Thus, the barges appear to be engaged exclusively in international, not domestic, trade.
In summary, it is the opinion of this office that, should you conclude that all four requirements enumerated hereinabove have been met, then it would appear that the floating crane barges and floating grain elevators would qualify for ad valorem tax exemption under Article VII Section 21 (C)(16).
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III/dra
xc: Senator Tom Casey Pete Peters
State of Louisiana
DEPARTMENT OF JUSTICE CIVIL DIVISION P.O. BOX 94005 BATON ROUGE TEL: (504) 342-7013 RICHARD P. IEYOUB 70804-9005 FAX: (504) 342-2090 ATTORNEY GENERAL